Rosa ONTIVEROS, Plaintiff,

v.

Neal J. ANDERSON and American Heritage Life Insurance Co., a foreign corporation registered to do business in the State of Illinois, Defendants.

No. 85 C 6012.

United States District Court,
N.D. Illinois, E.D.

May 8, 1986.

John A. Flores, Laurence A. Velchek, Chicago, Ill., for plaintiff.

C. Joseph Yast, Lord Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendant American Heritage Life Insurance Co. removed this breach of contract and negligence action on diversity of citizenship and on the basis that the claim against it was separate and independent of the claim against defendant Neal J. Anderson, an Illinois citizen. The problem now is whether that removal was improvident and without jurisdiction, dictating that this court should remand the case to the state court from whence it was removed. This court holds that the case should be remanded pursuant to 28 U.S.C. § 1447(c).

### FACTS

Plaintiff Rosa Ontiveros claims that after American Heritage issued a life insurance policy to her son, Alfred Ontiveros (insured), naming plaintiff as the primary beneficiary, it was responsible upon the death of the insured to pay plaintiff the sum of $50,000. The policy was issued June 1, 1984, and contemplated payroll deduction of premiums. Alfred died on June 16, 1984. American Heritage refuses to pay plaintiff the $50,000 because it never received any premium payments from Alfredo.

Plaintiff brought an action in the Circuit Court of Cook County, Illinois, against American Heritage and its agent, Neal J. Anderson, claiming that (1) American Heritage's refusal to pay the amount payable under the life insurance policy is an unreasonable and vexatious breach of its contrac-

tual obligation; (2) American Heritage and its agent, Anderson, negligently, carelessly and wrongfully breached their duties to act upon the life insurance application within a reasonable time to implement the agreed-upon payroll deduction plan method of premium payment, or to notify the insured of the non-payment of premiums due; and (3) Anderson, as American Heritage's agent, failed in his duty to act upon the application of insured within a reasonable time after receipt to implement a payroll deduction plan through insured's employer, the Chicago Housing Authority, on issuance of the policy, and to notify the insured of Anderson's inability and/or failure to implement such plan for payment of premiums.

American Heritage, a Florida corporation with its principal place of business in Florida, removed the civil action to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(c), by virtue of diversity of citizenship of the parties. American Heritage contends that Anderson was fraudulently joined and that Rosa's claims against it are separate and independent of her claim against Anderson. Plaintiff denies that Anderson was fraudulently joined and asserts that the negligence cause of action can be maintained against Anderson. Therefore, since plaintiff and Anderson are both residents of Illinois, plaintiff asserts that the court lacks diversity jurisdiction. She also maintains that her claim against American Heritage is not separate and independent of her claim against Anderson because they both arise out of a single wrong. On this basis plaintiff moves to remand the action to state court pursuant to 28 U.S.C. § 1447(c).

## DISCUSSION

### I.

█ The rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) applies in cases where the court relies on diversity for jurisdiction over a particular claim or party. *Strawbridge* requires complete diversity, *i.e.*, the citizenship of all the plaintiffs must be diverse from the citizenship of all the defendants. This rule is also fully applicable to removal jurisdiction based on diversity. *Jadair, Inc. v. Walt Keeler Co., Inc.*, 679 F.2d 131 (7th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982); 1A Moore's Federal Practice, ¶ 0.161[1.–1] (1983). Since both plaintiff and Anderson are citizens of the same state, the presumption is that diversity is lacking. "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." 28 U.S.C. § 1447(c).

█ This court has diversity jurisdiction over the claims against Anderson only if Anderson was fraudulently joined by plaintiff. *Illinois C.R. Co. v. Sheegog*, 215 U.S. 308, 30 S.Ct. 101, 54 L.Ed. 208 (1909); *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981); *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir.1983); *Bodine's Inc. v. Federal Insurance Co.*, 601 F.Supp. 47 (N.D.Ill.1984). Parties fraudulently joined should be disregarded in determining diversity. *Coker*, 709 F.2d at 1440; 1A Moore's Federal Practice, ¶ 0.161[2] (1983). The burden of proving allegations of fraudulent joinder rests on American Heritage as the removing party. *Coker*, 709 F.2d at 1440; *Yawn v. Southern Railway Co.*, 591 F.2d 312, 316 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979). Fraudulent joinder occurs either when "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or [when] there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). *See also Coker*, 709 F.2d at 1440; *B. Inc.*, 663 F.2d at 549; *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968). "All factual issues and questions of controlling substantive law must be evaluated in favor of the plaintiff." *Id.* If there is even a possibility that a state court

would find that the complaint states a cause of action against the resident defendant, the district court must find that the joinder was proper and remand the case to the state court. *Id.* *See also Coker,* 709 F.2d at 1440–1441; *Chappell v. S.C.A. Services, Inc.,* 540 F.Supp. 1087, 1091 (C.D.Ill. 1982).

■ American Heritage has not proved fraudulent joinder. American Heritage argues that insurance agents, unlike brokers, act on behalf of the insurer, not the insured. Since Anderson is an agent of American Heritage, it claims that he owed no duty of care, competence or skill to the customer of the insurer. American Heritage cites *Bellmer v. Charter Security Life Insurance Co.,* 105 Ill.App.3d 234, 239–240, 433 N.E.2d 1362, 1367, 61 Ill.Dec. 34, 39 (4th Dist.1982), as authority for its contention that Anderson, as its agent, owed the insured no duty "to inform them of [premium payment] default, the termination of the policy, or to take any other actions with respect to plaintiffs' rights and duties under either policy."

In *Bellmer,* an ex-husband, as part of a divorce agreement, was required to continue making premium payments on a policy insuring the life of the plaintiff, his ex-wife. Their son was beneficiary. The insurance agent knew of the divorce agreement requirements, yet when the ex-husband became delinquent in the premium payments the agent did not notify the insured. However, the agent did notify the ex-husband of the delinquency both before and after the running of the grace period and even applied an annuity interest payment to a portion of the delinquent premium. After the ex-husband died, the insured discovered that the policy had lapsed. She sued the agent and insurance company claiming that they had breached their duty to her, as owner of the policy, to inform her of her ex-husband's delinquency within a reasonable period of time. The agent's failure to so notify the plaintiff caused her to be lulled into non-action, and she argued that she was injured by her reliance. The court in *Bellmer* held that the agent did not owe the plaintiff a duty unless he had entered into a separate agreement with the plaintiff, requiring that he give her some notice. Since there was no agreement between the plaintiff and the agent that he act on her behalf as her agent, he could not be liable for failure to notify her. *Bellmer,* 105 Ill.App.3d at 239–240, 433 N.E.2d at 1366, 61 Ill.Dec. at 38. American Heritage contends that Anderson similarly cannot be liable for failure to notify Alfredo that the first premium was not paid, and therefore is fraudulently joined.

However, the Illinois appellate courts are not in complete agreement on the issue of whether insurance agents, as opposed to insurance brokers, owe the insured a duty to act upon the insurance application within a reasonable time and make sure the policy was implemented, including notifying the insured of any lack of coverage. *See, e.g., Talbot v. Country Life Insurance Co.,* 8 Ill.App.3d 1062, 291 N.E.2d 830 (3d Dist. 1973); *Wheaton National Bank v. Dudek,* 59 Ill.App.3d 970, 376 N.E.2d 633, 17 Ill. Dec. 487 (1st Dist.1978). *See also Rothberg v. Numerovski,* 58 Ill.App.2d 372, 208 N.E.2d 12 (1st Dist.1965) (if agent represents to insured that insurance is in effect, where contract to procure insurance exists, the agent has a duty to procure the requested coverage).

In *Talbot* the court held that an *agent* owes an applicant for insurance the duty to act on the application with reasonable promptness. *Talbot,* 8 Ill.App.3d at 1065, 291 N.E.2d at 832. Larry Talbot, the husband of the plaintiff, applied in writing to the insurance company's agent for a life insurance policy and paid the first premium. Larry Talbot died five months later. The agent retained the premium and made no attempt to return it until two days after Larry Talbot died. The court stated that

one who enters upon an affirmative undertaking, to perform a service for another, is required to exercise reasonable care in performing it, to avoid injury to the beneficiary of the undertaking. Insurance agents who take applications, particularly where they receive premi-

ums, may be said to have entered definitely upon a course of affirmative conduct, and be liable for misfeasance if they unreasonably delay.

*Id.*

Plaintiff contends that Anderson's acceptance of an insurance application from her son and issuance of a policy with an agreed-upon payroll deduction plan method of premium payments imposed a duty on Anderson to act within a reasonable time to implement the payroll deduction plan or at least notify the insured of any delay. The complaint suggests that the policy was to issue pursuant to a species of a group plan, that the insureds under the plan did not normally pay the premiums directly, and that the insurer (and presumably here its agent Anderson) normally initiated the paperwork to implement a payroll deduction plan by which the employer paid the insurer. The holding in *Talbot* would appear to create the possibility that a state court would find that plaintiff's complaint in this case states a cause of action against Anderson. An agent must "act with reasonable promptness on the application ... so that [the applicant] may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere". *Id.; see also Coffey v. Polimeni*, 188 F.2d 539 (9th Cir.1951).

American Heritage has not met its heavy burden of proving that plaintiff fraudulently joined Anderson.[1] Although *Bellmer* and *Talbot* somewhat conflict, *Talbot* has not been reversed by the Illinois Supreme Court and appears to still be good law in Illinois. *See generally Cummings Foods, Inc. v. Great Central Insurance Co.*, 108 Ill.App.3d 250, 255, 439 N.E.2d 37, 41, 64 Ill.Dec. 108, 113 (4th Dist.1982) (*citing Talbot* with approval); *Dudek*, 59 Ill.App.3d at 972, 376 N.E.2d at 635, 17 Ill.Dec. at 489 (a

reasonable time can be as short as six days). Evaluating all factual issues and questions on controlling substantive law in favor of the plaintiff, there exists at least a possibility that Anderson may be liable for breach of his duty as an insurance agent. Anderson may have had a legal duty to act more promptly or to give the insured notice of the lack of coverage. We would leave the resolution of this issue to the state court and remand the action for lack of diversity jurisdiction.

## II.

■ American Heritage additionally claims that removal was proper pursuant to 28 U.S.C. § 1441(c). Section 1441(c) provides that:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The "separate and independent" language requires the courts to apply a strict standard of removability with the purpose of limiting removal from state courts. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 10, 71 S.Ct. 534, 538, 95 L.Ed. 702 (1951); 28 U.S.C. § 1441, Reviser's Note, ("In this respect [the separate and independent language] will somewhat decrease the volume of federal litigation."); *Lewis v. Louisville & Nashville Railroad Company*, 758 F.2d 219, 221 (7th Cir.1985).

■ In *American Fire & Casualty*, the seminal case in this matter, the Supreme

---

1. American Heritage's additional argument, that where the identity of an agent's principal is disclosed only the principal, not the agent, is bound, is spurious under the facts of the present case. The agency principle invoked by American Heritage grants immunity to an agent for the principal's liability under a *contract* when there has been sufficient disclosure of the principal's identity. *Valdenburg, K.G. v. The S.S.*

*Henry Denny*, 295 F.2d 330, 333 (7th Cir.1961); *see generally* 3 Am.Jur.2d, *Agency*, § 294. Plaintiff's claims against Anderson are clearly grounded in tort and not in contract. It is on this basis that the court must determine whether plaintiff has a possible cause of action against Anderson or whether Anderson was fraudulently joined.

Court held that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).... In making this determination we look to the plaintiff's pleading, which controls." 341 U.S. at 14, 71 S.Ct. at 540. The plaintiff in *American Fire & Casualty* brought suit in a Texas court to recover for a loss by fire, and named as defendants two foreign insurance companies and a resident insurance agent of the companies. The Supreme Court found the removal by one of the insurance companies on the basis of § 1441(c) was improper because there were no "separate and independent" claims or causes of action. "The single wrong for which relief is sought is the failure to pay compensation for the loss on the property. Liability lay among three parties, but it was uncertain which one was responsible." *American Fire & Casualty*, 341 U.S. at 14, 71 S.Ct. at 540.

Similarly, the plaintiff in the present case has brought a claim alleging liability for a single wrong, *i.e.*, the failure to pay compensation for the death of her son. She brought alternative charges against American Heritage and Anderson because she was uncertain which one was responsible. The damage to her comes from a single incident which arises out of an interlocked series of transactions: the solicitation and issuance of a life insurance policy. The allegations directed against Anderson involve substantially the same facts and transactions as do the allegations against American Heritage. It cannot be said that the complaint contains separate and independent claims for relief as required by § 1441(c). Therefore, we conclude that American Heritage has no right to removal.

## CONCLUSION

For the above reasons, this case was removed improvidently and without jurisdiction. We thus remand this case pursuant to 28 U.S.C. § 1447(c).